### ALBERT T. BURNLEY v. WILLIAM SHARP.

Where there were two part owners, or partnership owners, of a stock of cattle, one a resident, and the other a non-resident, and the former made a bill of sale of the whole stock, in February, 1849, to his creditor, and wrote the fact to his co-partner, who replied, but did not assent to, or dissent from the sale, but expressed the hope that the former would be able to raise the money to pay for the cattle; and in February, 1851, the creditor with the assent of his debtor, the resident part owner, sold the stock of cattle to the defendant, and gave the resident part owner credit for the price, and the non-resident part owner brought suit against the last purchaser for his part of the stock, in November, 1853, it was held that the action was barred by the Statute of Limitations.

Error from Brazoria. Tried before the Hon. Nelson H. Munger.

Suit by the plaintiff in error against the defendant in error, to recover one half of a certain stock of cattle, and the value

of the beeves killed out of the stock, by the defendant, for his own use. Plea of adverse possession for two years. It was in proof that until the first day of January, 1852, the cattle were in the care of a stock keeper employed by Love seven years before, and that Love paid him until the first of January, 1851, and the defendant paid him for the year ending the first of January, 1852; and that after the first of January, 1852, the cattle continued in possession of the defendant. The bills of sale were not recorded. They purported to convey all of Love's cattle, in Brazoria county, estimated at a certain number, which, from the testimony, would cover the whole stock at that time; and Love testified that it was intended thereby to convey the whole stock. The other facts are stated in the Opinion.

*Allen & Hale*, for appellant. III.—There remains only the pretence of adverse possession, but to maintain that, it is necessary to show the *intention*, the *animus*, which accompanied the possession, to be hostile to Burnley. But Prescott, Burnley's Agent, was not displaced and did not recognise Sharp's title. Neither Ware or Sharp pretended to hold Burnley's interest or share; and certainly Love had no desire or intention to oust Burnley. Love remained in constructive possession, indeed, and held for Ware, but only through Prescott, and only of his own moiety. (See Angell on Lim. Ch. 31, Sec. 5, 11; Id. Ch. 32, Sec. 11, 12.)

IV.—Then as to the motion for a new trial. It is clear that Bates would, at such trial, prove the want of any *adverse* possession, or *adverse* claim on the part of Ware and Sharp, in 1852, that is, within two years after the commencement of the suit.

*J. B. & G. A. Jones*, for defendant in error.

HEMPHILL, CH. J. The main question in this cause is, can the defendant claim the benefit of the Statute of Limitations?

James Love and the plaintiff, Albert T. Burnley, were part owners, or partnership owners, of a stock of cattle on a rancho not far from a plantation owned by them in Brazoria county. Burnley resided abroad, and the affairs of the joint concern were managed and controlled by Love, the resident partner. In February, 1849, Love, being indebted to N. A. Ware, executed to him a bill of sale of the whole of the said stock of cattle. Such was the import and extent of the bill of sale, in the opinion of Love, as expressed in his testimony in the cause. A subsequent arrangement was made between Love and Ware, by instrument dated 6th June, 1850, by which Love was authorized to make sale of the cattle, the proceeds to be paid to Ware; and both the bill of sale and the subsequent agreement were assigned by Ware to the defendant Sharp, on the first of February, 1851, in consideration of a note of five thousand four hundred and sixty-four dollars and eleven cents, for the whole amount of which the said Love received a credit on account of interest due by him to the said Ware.

The defendant Sharp had, on the seventh of December, 1850, purchased the interest of Burnley in the plantation, stock, &c.

Recurring to the sale of the cattle by Love to Ware on the 5th February, 1849, it appears from the testimony of Col. Love, that he made an absolute sale of the whole stock of cattle; that Ware required it as the only condition on which he would grant indulgence; that witness informed Ware that Burnley owned one half interest in the stock; that immediately after said sale to Ware, witness wrote to Burnley, informing him that he had made said sale; that Burnley wrote to witness in reply to this letter; he neither assented to, nor dissented from, the sale, but only expressed a hope that witness would be able to raise the money to pay for the cattle; that Ware afterwards, with the consent of witness, sold the stock of cattle to defendant Sharp.

The suit was instituted on the 11th November, 1853, nearly five years from the sale of the cattle by Love to Ware, and

two years and nine months subsequent to the sale by the latter to Sharp. The sale intended to transfer the whole right in the cattle. It was made by the managing part owner, or partner, and was communicated to Burnley. It was, as to him, a notorious act of ouster, and put the Statute in motion against his rights. (3 Howard, 674 ; 10 Pick. 161 ; 5 Wheat. 116— 124 ; Angell on Lim. Cap. 32, Sec. 6—16.) There is no act or declaration on the part of Burnley, evincing an intention to claim prior to the commencement of this suit. When informed of the sale, he expressed neither assent nor dissent, but only a hope that the witness would be able to raise the money to pay for the cattle. This is not a very intelligible expression, and may mean either that Love might be able to raise the money to repurchase the cattle from Ware, or to pay Burnley for his share of the stock. But let it mean what it may, or let the acts of Burnley be what they will, yet, if he did not commence suit within two years after an act of notorious ouster and a claim of adverse right, he would be barred of his action.

To show that the claim, on the part of Ware and Sharp, was not adverse to Burnley, the evidence of General Bates was introduced, to the effect that in the latter part of the year 1850 or 1851, he was negotiating with Ware and Love for the purchase of Love's interest in the plantation ; did not recollect the precise time, but thought it was just before the sale of Love's interest under the deed of trust ; that Ware told witness during such negotiations, that he wished to retain the Love interest in the cattle, for his nephew, or grandson, or some relation, and that Ware said witness might buy the Burnley interest, that he could purchase it on better terms than Ware could ; that about the time of this negotiation, he heard Sharp complain that when he purchased Burnley's interest in the plantation, slaves and stock, he thought he was purchasing all Burnley's interest in the cattle, but that it now seemed that was not the case. The interest of Love, in the plantation, was sold in the Spring of 1852, as appears from the evidence in the

case, and there must be some mistake on the part of the witness, in fixing or supposing the date of the conversations to be just before the date of said sale. At that time, Ware had no interest or right in the cattle. He had previously sold them to Sharp, viz : on the first day of February, 1851, and it does not appear from this record, that he ever subsequently acquired any interest. And when Ware spoke of reserving an interest in the cattle for himself or a relative, he must have grossly misapprehended his rights, having at that time no interest ; or the witness must have been mistaken as to the date of the conversation. But, at all events, the admissions of Ware can have no effect on the rights of Sharpe. It does not appear that the latter had any knowledge of them. Ware held under a full, absolute bill of sale ; one intended by the vendor to convey the whole right in the cattle. Sharpe purchased from him as holding such right, and with an assignment of his title and interest under said bill of sale, and cannot be affected by parol admissions of his vendor, especially when made subsequent to his purchase, and also without his knowledge or assent.

As to the complaint by Sharpe, of mistake or deception in this, that by the purchase of Burnley's interest in the plantation, slaves and stock, he had not acquired Burnley's interest in the cattle, as he supposed he would, there appear on the record quite sufficient grounds for such complaint. The cattle had for years been kept on the plantation. They were subsequently removed to a rancho, not far distant, and were constantly used for all plantation purposes, and a deed expressly conveying an interest in the stock, might very reasonably have been supposed to include the cattle. Such was the import of the terms of the conveyance, and the ground of Sharpe's complaint was most probably not against the terms of the deed, which were sufficiently ample (or he might have supposed so,) to pass the cattle, but against the act of Love, by which the whole of the cattle had been previously transferred to Ware,

leaving none to be operated upon by the deed of Burnley's interest to Sharpe. This was most probably the especial cause of his complaint; but whatever may have been the specific ground of dissatisfaction, the evidence does not amount to an admission by Sharpe, after he purchased the cattle from Ware, that he was holding in common with Burnley. The bill of sale conveys and was intended to convey the entire right, and the presumption is that Sharpe held according to his conveyance, and this presumption is not rebutted by any act or admission of Sharpe, sufficient to repel its force and effect.

The motion for new trial was properly overruled. The original motion was amended by the averment of newly discovered evidence since the trial. This was supported by an affidavit of Joseph Bates, to the effect that the statements of Ware, relative to his desire to keep Love's interest in the stock of cattle, and that the witness could purchase Burnley's, and also the complaints by Sharpe of bad treatment and his being deceived as to the extent of the deed of the Burnley interest, were made between the 25th December, 1851, and the first of April, 1852; and that the witness was mistaken as to the time of said statements, and the time stated in the affidavit was the correct time. At the trial the witness testified that these statements and complaints were about the latter part of 1850 or 1851, and he thought it was just before the sale of Love's interest under the deed of trust. The evidence of Love showed that this sale was in the spring of 1852; so that, as to the point of time of the statements, there is no material variance between the evidence of the witness on the trial, and that given in the affidavit. On the trial he swears that they were in the latter part of 1850 or 1851—thought they were just before a certain sale which had been previously proved to have been in the spring of 1852. In the affidavit he declares them to have been between the 25th December, 1851, and the 1st of April, 1852. At the trial, he thought they had occurred at a time which must been about the early part of 1852; subsequently he

became satisfied it was about that time. If the mistakes of a witness were in any case sufficient ground for a new trial, it could hardly be that a mistake of this character would form such a ground. The effect of such mistake, as a ground for a new trial, has been examined by this Court in some cause not now within my reach, and the result of the decision was, it is believed, that such ground was feeble in itself and to be received with great caution and circumspection. (Vide 4 Tex. R. 311.)

We are of opinion that the judgment be affirmed.

Judgment affirmed.